UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DENISHA L. COOPER,

       Plaintiff,

v.                                      CASE NO. 3:17-cv-403-J-34JBT

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

       Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the undersigned on Plaintiff's appeal of an administrative decision denying her application for Supplemental Security Income. In a decision dated December 28, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, as defined in the Social Security Act, since February 1, 2013, the date the application was filed. (Tr. 34–46.) Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs,

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

and the applicable law.   For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I.   Issues on Appeal

Plaintiff raises the following two issues on appeal:

> Issue Number 1:
>
> Whether the ALJ erred in determining that the claimant has the residual functional capacity to perform "light" work with some additional non-exertional limitations after failing to adequately weigh and consider the opinions of the examining physicians and treating physicians.
>
> Issue Number 2:
>
> Whether the ALJ improperly relied on the testimony of the Vocational Expert after posing and relying on a hypothetical question that did not adequately reflect the limitations of the claimant.

(Doc. 21 at 2.)

## II.   Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).  "With respect to the Commissioner's legal conclusions, however, our review is *de novo*."  *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th

2

Cir. 2002).

### III.    The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Plaintiff

had the severe impairments of "bipolar disorder, epilepsy, obesity, and a spine

disorder."[2]   (Tr. 36.)   At step three, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled a listing.

(Tr. 36–38.)   In reaching this finding, the ALJ found that Plaintiff had a mild

restriction in activities of daily living; moderate difficulties in social functioning; and

moderate difficulties with regard to concentration, persistence or pace.  (Tr. 37.)

Prior to step four, the ALJ found that Plaintiff had the residual functional

capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 416.967(b).
> She cannot climb ladders, ropes and scaffolds.  She
> cannot work around unprotected heights and moving or
> hazardous machinery.   She cannot drive motorized
> vehicles.  She is limited to simple, unskilled work that
> involves repetitive tasks.   She may have only brief,
> occasional and superficial contact with coworkers and
> the public.  She is able to handle slow to moderate pace
> work.

(Tr. 38.)

At step four, the ALJ found that Plaintiff had no past relevant work.  (Tr. 45.)

However, at step five, the ALJ found that, considering Plaintiff's age (39 on the

---

[2] The sequential evaluation process is described in the ALJ's decision.  (Tr. 34–36.)

date the application was filed), education, work experience, and RFC, jobs existed

in significant numbers in the national economy that Plaintiff could perform.  (Tr.

45–46.)  Therefore, Plaintiff was not disabled.  (Tr. 46.)

> IV.    **Analysis**

>> A.    **Treating Physicians**

Plaintiff argues that the ALJ erred in weighing the opinions of a number of

physicians.  (Doc. 21 at 9–17.)  First, she argues that the ALJ failed to give

appropriate weight to the opinions of treating doctors Chirag Desai and Purnima

Kumar.  (*Id.* at 12–15.)  With regard to Dr. Desai, the ALJ reviewed his treatment

notes dated December 26, 2013, April 22, 2014, and December 30, 2014.  (Tr. 42–

43.)  As part of that review, the ALJ noted that Dr. Desai had assigned Plaintiff

Global Assessment of Functioning ("GAF") scores within the moderate range on

all three occasions.[3]  (Tr. 42–43.)  The ALJ accorded significant weight to the

opinions of Dr. Desai as to all three visits because "the objective findings are

consistent with a [sic] record as a whole, which shows that the claimant's

symptoms are well controlled when she is compliant with medication" (as to visit

on December 26, 2013); because "it is consistent with the record as a whole, which

---

[3] The Global Assessment of Functioning ("GAF") scale generally provides in relevant part that a score of 41 through 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning; a score of 51 through 60 indicates moderate symptoms or moderate difficulty in such functioning; and a score of 61 through 70 indicates mild symptoms or some difficulty in such functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (*DSM-IV*) 34 (4th ed. 2000).  The *DSM-5*, published in 2013, no longer contains the GAF scale.

shows that the claimant's mental symptoms are only moderate" (as to visit on April

22, 2014); and because "the objective findings are consistent with the record as a

whole, which shows the claimant's symptoms are moderate and are well controlled

with medication" (as to visit on December 30, 2014).  (Tr. 42–43.)

The ALJ also reviewed treatment notes from Dr. Kumar dated February 16,

2015 and April 17, 2015.  Regarding these visits, the ALJ stated:

> On February 16, 2015, the claimant had an initial
> psychotherapy appointment with Purnima Kumar, Ph.D.
> The claimant reported being depressed.  She said she
> isolated herself so that people would not hurt her.  She
> said she stayed inside with the curtains drawn. The
> claimant's grooming and hygiene were within normal
> limits.  The claimant made good eye contacted [sic].  Her
> mood was sad, and her affect was blunted.  Dr. Kumar
> diagnosed the claimant with bipolar affective disorder, I,
> depressed.  Dr. Kumar assigned a GAF score of 41-50.
> On April 17, 2015, the claimant said she was sleeping
> during the day.  She said she was independent in
> activities of daily living.  She said she was going out of
> the house more and trying to keep active.  Her grooming
> and hygiene were good.  Her mood was happy, and her
> affect was bright.  Her focus and concentration were
> adequate.   Dr. Kumar diagnosed the claimant with
> depression and assigned a GAF score of 51-60.  (Ex.
> 15F)   Significant weight is accorded to this opinion
> because the objective findings are consistent with the
> record as a whole, which shows the claimant's symptoms
> are moderate and are well controlled with medication.

(Tr. 43) (footnotes omitted).

Plaintiff argues that the ALJ erred in giving too much consideration to GAF

scores.  She notes that GAF scores are of questionable value in determining

disability.  (Doc. 21 at 12–13.)  The undersigned recommends that the Court reject

this argument.  Although the Commissioner is certainly not bound by GAF scores,

the Eleventh Circuit has recognized that GAF scores "may be helpful in formulating

a claimant's RFC."  *Thornton v. Comm'r, Soc. Sec. Admin*, 597 F. App'x 604, 613

(11th Cir. 2015).[4]  In addition, the ALJ did not rely on GAF scores alone.  Rather,

he compared them to the record as a whole, and, as shown above, gave them

significant weight only because they were consistent with that record, including the

treatment notes.   Thus, the undersigned recommends that this argument be

rejected.

Next, Plaintiff argues that the ALJ erred in not indicating the weight he

assigned "to the other conclusions of [Drs. Desai and Kumar]." (Doc. 21 at 13.)  In

support of this argument, Plaintiff cites various treatment notes that contain

Plaintiff's subjective history, mental status examinations, and doctor impressions.

(*Id.* at 13–15.)  Thus, Plaintiff appears to be arguing that the ALJ needed to assign

weight to multiple entries in the treatment notes.  The undersigned recommends

that the Court reject this argument.

In support of this argument, Plaintiff cites *Winschel.*  (*Id.* at 13–14.)  The

undersigned recommends that this case is distinguishable from *Winschel* because

the cited treatment notes do not include judgments about the severity of Plaintiff's

---

[4] Although unpublished Eleventh Circuit opinions are not binding precedent, they may be persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

impairments, or what she can still do despite those impairments, within the meaning of *Winschel.*  Moreover, the undersigned recommends that any error on the ALJ's part in failing to treat certain portions of the treatment records as opinion evidence is harmless because Plaintiff has not shown how any of these notes, other than perhaps her subjective complaints, is inconsistent with the ALJ's RFC assessment.

> In *Winschel*, the Eleventh Circuit stated:

> > "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."   20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight."  *Lewis* [*v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)]; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).

> > . . .

> > Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

631 F.3d at 1178–79.

> In *Winschel*, the ALJ "referenced Winschel's treating physician only once, and that reference merely noted that Winschel saw the doctor monthly."  *Id.* at

7

1179. "The ALJ did not mention the treating physician's medical opinion, let alone give it 'considerable weight.'" *Id.* The Eleventh Circuit rejected the Commissioner's argument that the ALJ was not required to assign evidentiary weight to Winschel's treating physician's treatment notes because they did not constitute a "medical opinion," finding that:

> The treating physician's treatment notes included a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a "statement[ ] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions.

*Id.* The Eleventh Circuit ultimately determined that the ALJ's conclusions suggested that she had not considered pertinent elements of the opinions of both a treating and an examining physician, and therefore reversed for the ALJ to "explicitly consider and explain the weight accorded to the medical opinion evidence."[5]  *Id.*

The undersigned recommends that the ALJ adequately reviewed the treatment notes from Drs. Desai and Kumar. (Tr. 42–43.) The ALJ noted Plaintiff's subjective complaints, her mental status examinations, and the doctors' observations and assessments. (*Id.*)  Moreover, the undersigned recommends

---

[5] The Eleventh Circuit never quoted from or specifically described the pertinent medical records at issue.

that *Winschel* does not stand for the proposition that the ALJ must treat as opinion evidence, and assign weight to, every physical examination finding, impression, diagnosis, or treatment plan referred to in the records.  To interpret *Winschel* in this manner would place an unrealistic burden on ALJs because it would require them to address innumerable physician observations, findings, impressions, diagnoses, and remarks.[6]  The recitation set forth by Plaintiff of a portion of the subject records, containing numerous observations and assessments, provides a good example of the unworkability of Plaintiff's argument.  (Doc. 21 at 14–15.)  In addition, Plaintiff's argument is contrary to the law that the ALJ need not refer to every piece of evidence in the decision.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.") (internal citations and quotation marks omitted).  Thus, the undersigned recommends that the ALJ did not err in failing to state the weight he was according to the cited portions of treatment records of Drs. Desai and Kumar.

In addition, the undersigned recommends that any error on the ALJ's part in

---

[6] Moreover, diagnoses do not establish disability.  *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient [to prove disability]; instead, the claimant must show the effect of the impairment on her ability to work.") (quotations omitted).

9

failing to treat certain portions of the treatment records as opinion evidence is harmless because Plaintiff has not shown how any of these portions is inconsistent with the ALJ's RFC assessment.  *See Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010) ("Although he did not specifically address the findings regarding poor functionality in dealing with supervisors or stress, his RFC finding was not inconsistent with this.") (footnote omitted).  Thus, the undersigned recommends that, to the extent any actual opinion evidence, other than GAF scores, might exist somewhere in Plaintiff's treatment records, the ALJ's failure to address it as such is harmless.

Moreover, although it appears that the ALJ neglected to address the one GAF score from Dr. Kumar in the serious range, and treatment notes from Dr. Kumar dated July 30, 2015 and October 23, 2015, the undersigned recommends that no error occurred.  As previously noted, there is no requirement that the ALJ refer to every piece of evidence in the decision.  *See Dyer*, 395 F.3d at 1211. There is also no requirement that the ALJ ascribe weight to every GAF score in the record or discuss every treatment note.  The decision is clear that the ALJ found that Plaintiff's mental symptoms were moderate, and therefore the decision is sufficient for meaningful review.  *See id.  See also Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.") (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).  Moreover, there is nothing materially different between the treatment notes explicitly reviewed by the ALJ and the treatment

notes dated July 30, 2015 and October 23, 2015.  (Tr. 40–43, 1061–63, 1140–42.)

Therefore, any error is harmless.  *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x

901, 903 (11th Cir. 2011) (applying the harmless error doctrine to social security

cases).

### B.      Examining Physicians

#### 1.      Dr. Darrin Kirkendall

Next, Plaintiff argues that the ALJ erred in giving little weight to the opinions

of Dr. Darrin Kirkendall, an examining physician.  (Doc. 21 at 15–16.)  In order to

discount some of the opinions of Dr. Kirkendall, the ALJ only had to provide

adequate reasons supported by substantial evidence.  *See McNamee v. Soc. Sec.

Admin.*, 164 F. App'x 919, 924 (11th Cir. 2006) (finding no reversible error

"[b]ecause the ALJ gave specific reasons for according no weight to [an examining

physician's] opinion, and because the ALJ based his decision on substantial

medical evidence").

In addressing the evaluation and opinions of Dr. Kirkendall, the ALJ stated:

> On July 1, 2013, the claimant participated in a consultative psychological evaluation with Darrin Kirkendall, Ph.D.  Ms. Cooper used public transportation to get to the appointment.  The claimant said she left her job as a janitor because of reading problems.  Ms. Cooper reported four psychiatric hospitalizations, but she was unable to report the dates or identify the hospitals. The claimant said she had received medication management services since 1984.  Ms. Cooper said Risperdal was prescribed for her.  The claimant denied any significant weight gain or weight loss.  Ms. Cooper endorsed several symptoms including irritability, social withdrawal and recurrent thoughts of death or suicide.

> Ms. Cooper reported excessive apprehension and worry. The claimant reported that she was uncomfortable around people. She said she heard background conversations.   The claimant admitted occasional marijuana use. The claimant was cooperative, but her social skills were poor. The claimant was appropriately dressed and groomed.   The claimant's mood was dysthymic.  The claimant's attention and concentration were mildly impaired due to limited intellectual functioning.  The claimant's recent and remote memory skills were mildly impaired.  Dr. Kirkendall opined that the claimant's intellectual functioning was in the borderline range.  He said her insight and judgment were poor.  Ms. Cooper said she was independent in activities of daily living.  She said she could cook, prepare food, clean and do laundry.  The claimant said she could shop if she had someone with her.   The claimant said her boyfriend managed most of her money.  She said she occasionally went to appointments with friends.  Ms. Cooper said her relationships with family members were strained.   Dr. Kirkendall opined that the claimant could perform unskilled work.  He said her ability to appropriately deal with stress was markedly limited. Dr. Kirkendall diagnosed the claimant with major depressive disorder, moderate with psychotic features and rule out schizoaffective disorder. He assigned a GAF score of 50. (Ex. 6F)  Some weight is accorded to this assessment. Significant weight is accorded to the finding that the claimant is able to perform unskilled work.  Little weight is accorded to the finding that she has marked limitations in the ability to handle stress because the mental health treatment records show that the claimant's mood is stable.

(Tr. 41.)

Plaintiff takes issue with the ALJ's finding that her mood was stable.  She

states: "There is no evidence in the record that Ms. Cooper's mood is stable,

contrary to the assertion of the ALJ." (Doc. 21 at 16.)  In support of her argument,

however, Plaintiff relies mainly on her subjective complaints.   (*Id.*)   The

undersigned recommends that substantial evidence supports the ALJ's finding that

Plaintiff's mood was stable.  For example, as the ALJ noted, on May 30, 2013,

Plaintiff's mood "was moderately depressed and mildly anxious with a restricted

affect"; on July 25, 2013, Plaintiff's mood "was mildly anxious and mildly

depressed"; on December 26, 2013, Plaintiff's mood "appeared euthymic with a

blunted affect"; on April 22, 2014, Plaintiff's mood "was depressed"; on December

30, 2014, Plaintiff's mood was "euthymic"; on February 16, 2015, Plaintiff's mood

was "sad"; and on April 17, 2015, Plaintiff's mood was "happy."  (Tr. 40–43.)  Thus,

the ALJ could reasonably conclude that, although there was some fluctuation in

Plaintiff's mood, her mood was relatively stable.  The undersigned recommends,

therefore, that the ALJ provided an adequate reason to discount a portion of the

opinion of Dr. Kirkendall.

### 2.    Dr. Philip Yates

Plaintiff also challenges the ALJ's consideration of the opinions of Dr. Philip

Yates, another examining doctor.  (Doc. 21 at 16–17.)  In addressing the evaluation

and opinions of Dr. Yates, the ALJ stated:

> On October 30, 2013, the claimant participated in a
> psychological evaluation with Philip Yates, Ph.D.
> Vocational Rehabilitation referred the claimant to the
> evaluation.  The claimant used public transportation to
> arrive an hour and a half early for the appointment.  The
> claimant was vague and at times clearly evasive.  Dr.
> Yates said the claimant was at times dreamy and
> disinterested and at times gave sudden, direct and terse
> responses.  The claimant said she stopped using alcohol
> a year earlier, and she said she had not used crack
> cocaine in five years. The claimant was appropriately

13

> dressed and groomed  She used a rolling walker.  Dr. Yates opined that the claimant could not relate to others, could not focus and could not be productive at work.  Dr. Yates opined that the claimant would not benefit from Vocational Rehabilitation services.  Dr. Yates diagnosed the claimant with a schizoaffective disorder, bipolar type. (Ex. 9F)  Little weight is accorded to this assessment because the claimant's presentation, which is the basis for the opinion, is inconsistent with the claimant's presentation at the hearing, and the claimant's presentation during this assessment is inconsistent with her presentation as described in the treatment notes.

(Tr. 42.)

Plaintiff takes issue with the ALJ's statement that Plaintiff's presentation to Dr. Yates was inconsistent with other record evidence.  (Doc. 21 at 16.)  The undersigned recommends, however, that this finding is supported by substantial evidence.  As part of his evaluation, Dr. Yates noted:

> It should be pointed out that Demsha [sic] was extremely difficult to interview because she was vague, at times clearly evasive, sometimes she was very dreamy and disinterested and at other times, she showed sudden very direct but terse responses.

(Tr. 841.)

The undersigned recommends that the ALJ could reasonably conclude that Plaintiff's presentation to Dr. Yates undermined Dr. Yates' opinions.  The ALJ first found that Plaintiff's presentation at the hearing was different than that described by Dr. Yates.  Although that is difficult for a reviewing court to evaluate, Plaintiff points to nothing in the transcript that contradicts this finding.  Moreover, substantial evidence supports the ALJ's conclusion that Plaintiff's presentation to

14

Dr. Yates was inconsistent with her presentation to her treating physicians.  For example, as the ALJ noted, on May 30, 2013 and on July 25, 2013, Plaintiff was described as "cooperative."  (Tr. 40–41.)  Moreover, as the ALJ concluded, there is little, if any, indication in the treatment records that Plaintiff was being uncooperative or evasive.    Therefore, the undersigned recommends that substantial evidence supports the ALJ's discount of the opinions of Dr. Yates.

### C.    Non-Examining Physicians

Finally, Plaintiff takes issue with the ALJ assigning significant weight to the opinions of the non-examining State agency doctors.  (Doc. 21 at 17.)  "Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians." *Wainwright v. Comm'r of Soc. Sec. Admin.*, Case No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam). *See also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).  However, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright*, 2007 WL 708971, at *2.  Furthermore, "[t]he ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam) (citation omitted).  Where an ALJ has validly discounted the opinions of a treating physician, he may give greater weight to the opinions of a non-examining physician.  *See Reed v. Comm'r of Soc. Sec.*, Case No. 2:12-cv-

429-FtM-38DNF, 2013 WL 5186668, at \*2 (M.D. Fla. Sept. 13, 2013) ("Additionally, where a consulting physician's opinion is more consistent with clinical evidence than the examining physician's opinion, the ALJ may accord greater weight to the consulting physician's opinion.") (citing *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 740 (11th Cir. 2011)).

In this case, as previously discussed, the undersigned recommends that the ALJ validly discounted the subject opinions of the examining physicians. Therefore, the undersigned recommends that the ALJ did not err in giving significant weight to the opinions of the non-examining State agency doctors.

### D.    Hypothetical Question

Plaintiff's final argument, that the hypothetical question to the vocational expert did not adequately reflect her limitations, is merely a reiteration of her previous arguments. (Doc. 21 at 17–19.)  Thus, for the reasons previously discussed, the undersigned recommends that the Court reject this argument as well.

### V.    Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence.

16

Applying this standard of review, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1.     The Commissioner's decision be **AFFIRMED**.

2.     The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on January 19, 2018.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record